IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Lafayette Emanuel Reed,<br><br>    Plaintiff,<br><br>v.<br><br>Carolyn W. Colvin, Acting Commissioner<br>of Social Security,<br><br>    Defendant. | C/A No. 0:14-326-PJG<br><br><br>**ORDER** |

   This social security matter is before the court pursuant to Local Civil Rule 83.VII.02 (D.S.C.) and 28 U.S.C. § 636(c) for final adjudication, with the consent of the parties, of the plaintiff's petition for judicial review. The plaintiff, Lafayette Emanuel Reed, brought this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) to obtain judicial review of a final decision of the defendant, Acting Commissioner of Social Security ("Commissioner"), denying his claims for Disability Insurance Benefits ("DIB"). Having carefully considered the parties' submissions and the applicable law, the court concludes that the Commissioner's decision should be affirmed.

**SOCIAL SECURITY DISABILITY GENERALLY**

   Under 42 U.S.C. § 423(d)(1)(A) and (d)(5), as well as pursuant to the regulations formulated by the Commissioner, the plaintiff has the burden of proving disability, which is defined as an "inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 404.1505(a); <u>see also</u>

Blalock v. Richardson, 483 F.2d 773 (4th Cir. 1973). The regulations require the ALJ to consider, in sequence:

(1)   whether the claimant is engaged in substantial gainful activity;

(2)   whether the claimant has a "severe" impairment;

(3)   whether the claimant has an impairment that meets or equals the requirements of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("the Listings"), and is thus presumptively disabled;

(4)   whether the claimant can perform his past relevant work; and

(5)   whether the claimant's impairments prevent him from doing any other kind of work.

20 C.F.R. § 404.1520(a)(4).[1] If the ALJ can make a determination that a claimant is or is not disabled at any point in this process, review does not proceed to the next step. Id.

Under this analysis, a claimant has the initial burden of showing that he is unable to return to his past relevant work because of his impairments. Once the claimant establishes a *prima facie* case of disability, the burden shifts to the Commissioner. To satisfy this burden, the Commissioner must establish that the claimant has the residual functional capacity, considering the claimant's age, education, work experience, and impairments, to perform alternative jobs that exist in the national economy. 42 U.S.C. § 423(d)(2)(A); see also McLain v. Schweiker, 715 F.2d 866, 868-69 (4th Cir. 1983); Hall v. Harris, 658 F.2d 260, 264-65 (4th Cir. 1981); Wilson v. Califano, 617 F.2d 1050, 1053 (4th Cir. 1980). The Commissioner may carry this burden by obtaining testimony from a vocational expert. Grant v. Schweiker, 699 F.2d 189, 192 (4th Cir. 1983).

---

[1] The court observes that effective August 24, 2012, ALJs may engage in an expedited process which permits the ALJs to bypass the fourth step of the sequential process under certain circumstances. 20 C.F.R. § 404.1520(h).



**ADMINISTRATIVE PROCEEDINGS**

In October 2010, Reed applied for DIB, alleging disability beginning April 29, 2010. Reed's application was denied initially and upon reconsideration, and he requested a hearing before an administrative law judge ("ALJ"). A hearing was held on November 13, 2012, at which Reed, who was represented by Christi B. McDaniel, Esquire, appeared and testified. After hearing testimony from a vocational expert, the ALJ issued a decision on December 6, 2012 finding that Reed was not disabled. (Tr. 9-17.)

Reed was born in 1961 and was forty-eight years old on his alleged disability onset date. (Tr. 124.) He has a high school education and has past relevant work experience as a dump truck operator, an assembly line worker, a printer color mixer, a box maker, and a boat builder. (Tr. 166.) Reed alleged disability due to hairy cell leukemia, stroke, diabetes, and hypertension. (Tr. 165.)

In applying the five-step sequential process, the ALJ found that Reed had not engaged in substantial gainful activity since April 29, 2010—his alleged onset date. The ALJ also determined that Reed's atypical leukocytosis and restless leg syndrome were severe impairments. However, the ALJ found that Reed did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (the "Listings"). The ALJ further found that Reed retained the residual functional capacity to

> perform light work as defined in 20 CFR 404.1567(b) with lifting and carrying 20 pounds occasionally and 10 pounds frequently; no more than occasional crawling and climbing of stairs or ramps; no climbing of ladders, ropes or scaffolds; no concentrated extremes of hot temperatures; and no hazards such as heights and dangerous machinery with exposed moving parts.



(Tr. 12.) The ALJ found that Reed was unable to perform any past relevant work, but that considering Reed's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that Reed could perform. Therefore, the ALJ found that Reed was not disabled from April 29, 2010 through the date of her decision.

The Appeals Council denied Reed's request for review on January 2, 2014, making the decision of the ALJ the final action of the Commissioner. (Tr. 1-3.) This action followed.

## STANDARD OF REVIEW

Pursuant to 42 U.S.C. § 405(g), the court may review the Commissioner's denial of benefits. However, this review is limited to considering whether the Commissioner's findings "are supported by substantial evidence and were reached through application of the correct legal standard." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996); see also 42 U.S.C. § 405(g); Coffman v. Bowen, 829 F.2d 514, 517 (4th Cir. 1987). Thus, the court may review only whether the Commissioner's decision is supported by substantial evidence and whether the correct law was applied. See Myers v. Califano, 611 F.2d 980, 982 (4th Cir. 1980). "Substantial evidence" means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig, 76 F.3d at 589. In reviewing the evidence, the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]." Id. Accordingly, even if the court disagrees with the Commissioner's decision, the court must uphold it if it is supported by substantial evidence. Blalock, 483 F.2d at 775.

**ISSUES**

Reed generally alleges that the Commissioner erred in finding that Reed was not disabled. However, review of the arguments in his brief reveals that Reed is essentially raising two specific issues: (1) the ALJ erred in failing to consider the severity of several alleged impairments at Step Two of the sequential process, and (2) the ALJ erred in discounting the opinions of Reed's treating physician, Dr. Iris Floyd-Norris.  As a result of these allegations of error, Reed also argues that the ALJ erred in assessing his residual functional capacity and in failing to find that he was disabled according to the medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids").  (Pl.'s Br., ECF No. 14.)

**DISCUSSION**

**A.     Step Two**

Step Two of the sequential evaluation requires the ALJ to "consider the medical severity of [a claimant's] impairment(s)." 20 C.F.R. § 404.1520(a)(4)(ii). The claimant bears the burden at this step to show that he has a severe impairment. See Bowen v. Yuckert, 482 U.S. 137, 146 n.5 (1987). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c).  "Basic work activities" means "the abilities and aptitudes necessary to do most jobs."  Examples of these include:

(1)   Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;
(2)   Capacities for seeing, hearing, and speaking;
(3)   Understanding, carrying out, and remembering simple instructions;
(4)   Use of judgment;
(5)   Responding appropriately to supervision, co-workers and usual work situations; and
(6)   Dealing with changes in a routine work setting.



20 C.F.R. § 404.1521(b).  "[A]n impairment can be considered as not severe only if it is a *slight abnormality* which has such a *minimal effect* on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." Evans v. Heckler, 734 F.2d 1012, 1014 (4th Cir. 1984) (emphasis in original) (internal quotation marks omitted).

At Step Two, the ALJ found that Reed's atypical leukocytosis and restless leg syndrome constituted severe impairments.  The ALJ also considered Reed's status post transient ischemic attack (TIA), hypertension, cholesterol, depression, and diabetes mellitus and found them to be non-severe.  Reed argues that the ALJ erred in failing to address his chronic pain, osteoarthritis, chronic cramping, and generalized weakness and in failing to find that these impairments constituted severe impairments.

In support of his allegations of error, Reed relies on his reports of chronic pain, osteoarthritis, chronic cramping, and weakness.  Reed also points to an assessment completed by Dr. Iris Floyd-Norris indicating that Reed had widespread osteoarthritis in multiple joints including the upper and lower extremities which affected his gait, balance, endurance, and ability to do fine manipulation tasks, and a clinical assessment of pain indicating that Reed's pain would distract from adequate performance of daily activities of work and that physical activity would increase Reed's pain such that it would distract him from tasks or cause a total abandonment of tasks. (Pl.'s Br. at 12, ECF No. 14 at 12) (citing Tr. 411, 410).  Reed also argues that Dr. Norris's prescription of a taper of Prednisone supports the severity of his chronic pain and that Dr. Norris found clinical evidence supporting his osteoarthritis in multiple joints.  (Id.) (citing Tr. 367, 369, 398, 340-42).  Finally,

Reed points to notes from Dr. Orachun Sitti indicating Reed's reports of generalized weakness and pain in multiple joints. (Pl.'s Br. at 12-13) (citing Tr. 357, 412-14).

As an initial matter, a medically determinable impairment "results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § 423(d)(3); 20 C.F.R. § 404.1508. "A physical or mental impairment must be established by medical evidence consisting of signs, symptoms, and laboratory findings, not only by your statement of symptoms." 20 C.F.R. § 404.1508 (citing § 404.1527). Reed's reliance on his self-reports of chronic pain, osteoarthritis, chronic cramping, and weakness do not meet this standard. Moreover, although the ALJ may not have mentioned the alleged impairments at issue in Step Two of the sequential evaluation, the ALJ's decision reflects that she specifically considered Dr. Norris's assessments discussing these impairments and found them to be unsupported and inconsistent with the record.[2]  (Tr. 13, 15.) Thus, contrary to Reed's arguments, the decision clearly reflects that the ALJ considered and evaluated these impairments in evaluating Reed's application for benefits. Thus, the court finds that even if the ALJ erred in failing to evaluate these impairments at Step Two, Reed cannot establish any harm from this error. See Carpenter v. Astrue, 537 F.3d 1264, 1266 (10th Cir. 2008) ("[A]ny error here became harmless when the ALJ reached the proper conclusion that [claimant] could not be denied benefits conclusively at step two and proceeded to the next step of the evaluation sequence."); Washington v. Astrue, 698 F. Supp. 2d 562, 580 (D.S.C. 2010) (adopting Report and Recommendation that included a collection of cases and finding "no reversible error where the ALJ

---

[2] Although Reed separately argues that the ALJ erred in evaluating these opinions, for the reasons discussed below, the court disagrees. See infra, Section B.



does not find an impairment severe at step two provided that he or she considers that impairment in subsequent steps").

**B.     Dr. Iris Floyd-Norris**

Reed also argues that the ALJ erred in discounting the opinions of his treating physician, Dr. Iris Floyd-Norris.  Typically, the Social Security Administration accords greater weight to the opinion of treating medical sources because treating physicians are best able to provide "a detailed, longitudinal picture" of a claimant's alleged disability.  See 20 C.F.R. § 404.1527(c)(2).  However, "the rule does not require that the testimony be given controlling weight." Hunter v. Sullivan, 993 F.2d 31, 35 (4th Cir. 1992) (*per curiam*).  Rather, a treating physician's opinion is evaluated and weighed "pursuant to the following non-exclusive list:  (1) whether the physician has examined the applicant, (2) the treatment relationship between the physician and the applicant, (3) the supportability of the physician's opinion, (4) the consistency of the opinion with the record, and (5) whether the physician is a specialist." Johnson v. Barnhart, 434 F.3d 650, 654 (4th Cir. 2005) (citing 20 C.F.R. § 404.1527).  Any other factors that may support or contradict the opinion should also be considered.  20 C.F.R. § 404.1527(c)(6).  In the face of "persuasive contrary evidence," the ALJ has the discretion to accord less than controlling weight to such an opinion. Mastro v. Apfel, 270 F.3d 171, 178 (4th Cir. 2001).  Further, " 'if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight.' " Id. (quoting Craig, 76 F.3d at 590).

Additionally, SSR 96-2p provides that a finding that

> a treating source medical opinion is not well-supported by medically acceptable clinical and laboratory diagnostic techniques or is inconsistent with the other substantial evidence in the case record means only that the opinion is not entitled to



> "controlling weight," not that the opinion should be rejected. Treating source medical opinions are still entitled to deference and must be weighed using all of the factors provided in 20 CFR 404.1527 and 416.927. In many cases, a treating source's medical opinion will be entitled to the greatest weight and should be adopted, even if it does not meet the test for controlling weight.

SSR 96-2p, 1996 WL 374188, at *5. This Ruling also requires that an ALJ's decision "contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." Id. at *5.

On December 22, 2011, Dr. Norris completed a one-page "Clinical Assessment of Pain" form in which she circled responses indicating that Reed's pain was present to such an extent as to be distracting to adequate performance of daily activities at work, that physical activity would greatly increase pain to such a degree as to cause distraction from tasks or total abandonment of tasks, and that drug side effects could be expected to be severe and limit effectiveness due to distraction, inattention, drowsiness, etc. (Tr. 410.) Also on December 22, 2011, Dr. Norris completed a "Physical Capacities Evaluation" form in which she checked or circled responses indicating that Reed would be able to lift and/or carry ten pounds occasionally and five pounds frequently during a normal workday, and sit for eight hours and stand and/or walk for two hours in an eight-hour workday. Dr. Norris also marked boxes indicating that Reed would require an assistive device to ambulate even minimally in a normal workday; that he would not need to avoid dust, gases, extremes of temperature, humidity, and other environmental pollutants; that he could push and pull with arm and/or leg controls and perform gross and fine manipulation occasionally; that he could climb stairs or ladders, balance, bend and/or stoop, reach, and operate motor vehicles rarely, and that he could



never work with or around hazardous machinery. Dr. Norris indicated that Reed was likely to be absent from work four days a month. Finally, Dr. Norris stated that the medical basis for her assessment was "widespread osteoarthritis in multiple joints, including upper and lower extremities. This affects his gait, balance, endurance, and ability to do fine manipulation tasks." (Tr. 411.)

The ALJ summarized both of these opinions. After also discussing the other evidence of record, including the treatment records and Reed's testimony, and the relevant law on evaluating opinions from treating physicians, the ALJ stated:

> I find that the evidence, including the clinical findings, laboratory findings, observations, and the claimant's activities of daily living, does not support the statement by Dr. Norris. Her medical assessment of distracting pain and drug side effects to the extent as to cause distraction/total abandonment of task is not supported and not consistent with her opinion at Exhibit 5F where she found the claimant met requirements for commercial driver fitness determination (Exhibit 6F). The claimant also had normal physical examination with no neurological deficits[.]

(Tr. 15.)

Reed argues that the Commissioner did not find any contradictory evidence to Dr. Norris's opinions in the medical records. Further, Reed argues that "[w]hile the Commissioner's statement that Dr. Iris Floyd-Norris found that the Plaintiff passed the DOT physical requirements on November 22, 2010, (Tr. 332-335) is accurate, the rest of the Commissioner's statements regarding the evidence are not accurate." (Pl.'s Br. at 15, ECF No. 14 at 15.) However, Reed argues that "after this date, it is clear from the medical evidence from Dr. Floyd-Norris that the Plaintiff's condition deteriorated" and that there is "no evidence in this case after November 22, 2010, that truly discounts the December 2011, opinions of Dr. Floyd-Norris."[3] (Id. at 16, 18.) Reed points to one visit in December 2010 where Dr. Norris found bilateral knee crepitation and assessed bilateral knee

---

[3] The court notes that the alleged onset date in this case is April 29, 2010.



pain/osteoarthritis, prescribing a prednisone taper and increased his Lorcet dosage (Tr. 353) and another record from March 2011 assessing osteoarthritis/knee and hip pain and changed Reed's prescription from Lorcet to Percocet as needed. (Tr. 367.) Reed also relies on Reed's subjective reports of pain contained in several records. (See Tr. 353, 395-401, 414.)

Upon review of the ALJ's decision and the record, the court concludes that the ALJ appears to have applied the relevant factors in evaluating Dr. Norris's opinions and finds that Reed has failed to demonstrate that the ALJ's decision to afford little weight to Dr. Norris's opinions is unsupported by substantial evidence or based on an incorrect application of the law. See 20 C.F.R. § 404.1527(c); Mastro, 270 F.3d at 178 (stating that "if a physician's opinion is not supported by clinical evidence or if it is inconsistent with other substantial evidence, it should be accorded significantly less weight") (internal quotation marks and citation omitted). In discussing this opinion, the ALJ recognized that Dr. Norris was a treating physician but found that the opinion was not consistent with the record. The ALJ found that Reed's activities of daily living were inconsistent with Dr. Norris's opinions. These activities included sweeping; mopping; making the beds; washing dishes and clothes; cooking; raking the yard; not needing special reminders to take medication or take care of personal needs and grooming; shopping in stores for groceries and personal items; going out to eat and to the movies; and the ability to pay bills, count change, handle a savings account, and use a checkbook. (Tr. 14.) Moreover, although Reed may be able to point to selective records that may arguably support Dr. Norris's opinions, he has failed to demonstrate that the ALJ's findings are unsupported by substantial evidence. In fact, the majority of the medical records that Reed appears to rely upon reflect Reed's self-reports as opposed to containing any medical findings or observations supporting such severe limitations from pain and in physical abilities. Further, in evaluating Reed's



subjective complaints of pain, the ALJ found that "[t]he evidence does not show significant strength deficits, circulatory compromise, neurological deficits, persisting muscle spasms, fasciculations, fibrillations, or muscle atrophy or dystrophy that are often associated with long standing, severe intense pain, and physical activity." (Tr. 14.)  In sum, the ALJ reasonably found that the clinical findings, laboratory findings, and observations in the records do not support Dr. Norris's opinions. It appears that the ALJ, as part of her duties in weighing the evidence, properly relied on medical evidence in making her residual functional capacity determination and resolving conflicts of evidence.  Where, as here, the record contains conflicting medical evidence, it is the purview of the ALJ to consider and weigh the evidence, and resolve the conflict.  See Craig, 76 F.3d at 589 (stating that the court may not "undertake to re-weigh conflicting evidence, make credibility determinations, or substitute [its] judgment for that of the [Commissioner]"); Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990) (holding that it is the ALJ's responsibility, not the court's, to determine the weight of evidence and resolve conflicts of evidence).

For all of these reasons, the court finds that Reed has not shown that the ALJ's decision with regard to Dr. Norris's opinions was unsupported by substantial evidence or reached through application of an incorrect legal standard. Thus, Reed's final arguments that the ALJ's residual functional capacity assessment is unsupported based on Dr. Norris's opinions and his argument that as a result, he should be found disabled under the medical-vocational guidelines, located at 20 C.F.R. Part 404, Subpart P, Appendix 2 (the "Grids"), similarly fail.

**ORDER**

For the foregoing reasons, the court finds that Reed has not shown that the Commissioner's decision was unsupported by substantial evidence or reached through application of an incorrect legal standard.  See Craig, 76 F.3d at 589; see also 42 U.S.C. § 405(g); Coffman, 829 F.2d at 517. Therefore, it is hereby

**ORDERED** that the Commissioner's decision is affirmed.

**IT IS SO ORDERED.**

_____
Paige J. Gossett
UNITED STATES MAGISTRATE JUDGE

August 13, 2015
Columbia, South Carolina